# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SORIN GROUP USA, INC., | Civil No. 14-4023 (JRT/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ST. JUDE MEDICAL, S.C., INC., | |
| Defendant. | |

James W. Poradek, Katherine S. Razavi, Timothy M. Sullivan, Patrick Bottini, and Kelly Fermoyle, **FAEGRE BAKER DANIELS LLP,** 90 South Seventh Street, Suite 2200, Minneapolis, MN 55402, and Jared B. Briant, **FAEGRE BAKER DANIELS LLP,** 3200 Wells Fargo Center 1700 Lincoln Street, Denver, CO 80203, for plaintiff.

JoLynn M. Markison and Joseph W. Hammell, **DORSEY & WHITNEY LLP,** 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402, for defendant.

Plaintiff Sorin Group USA, Inc. ("Sorin") brought this action against Defendant St. Jude Medical, S.C., Inc. ("St. Jude") based on St. Jude's hiring of two former Sorin employees – a supervisor, Danna Homan, and a salesperson, John Mitch Tracy. Sorin alleged multiple claims, including: intentional interference with contract; aiding and abetting breach of legal duties; and intentional interference with prospective economic advantage. The case was tried before a jury in November 2016. At trial, the jury found that the greater weight of the evidence did not show: (1) St. Jude intentionally interfered with Homan's or Tracy's contractual relationship with Sorin; (2) St. Jude aided and abetted Tracy's alleged breach of the duty of loyalty owed to Sorin; or (3) St. Jude

intentionally interfered with Sorin's reasonable expectation of economic advantage or benefit. Sorin now moves for a new trial claiming the Court erred when it admitted an exhibit into evidence and that St. Jude made a highly prejudicial attack contending Sorin was litigious during trial. Sorin also moves for the Court to review the clerk's cost judgment, requesting the Court adjust the cost judgment to exclude $7,442.64. The Court will deny Sorin's motion for a new trial and grant in part and deny in part Sorin's motion to review the clerk's cost judgment.

## BACKGROUND

St. Jude and Sorin are competitors in the heart valve and related products market. Homan and Tracy were Sorin employees. *Sorin Grp. USA, Inc. v. St. Jude Med. S.C., Inc.*, 176 F. Supp. 3d 814, 818-19 (D. Minn. 2016). Homan was employed as a Cardiac Surgery Regional Sales Manager at Sorin. *Id.* at 819. Homan left Sorin to work for St. Jude in January 2014. *Id.* Tracy worked for Sorin as a sales representative. *Id.* In August 2014, Tracy left Sorin to work for St. Jude. *Id.* Sorin brought this action in September 2014, alleging St. Jude recruited Homan and Tracy and tortiously caused them to breach their contracts, violate their fiduciary duties, and provide improper economic advantage to St. Jude. *Id.* at 828. After the Court granted in part and denied in part St. Jude's motion for summary judgment, *id.* at 839, the case proceeded to trial.

As relevant to this motion, the "*Saxon* Order" is an exhibit that appeared on Sorin's trial exhibit list. (Decl. of James W. Poradek, Ex. 1, Jan. 6, 2017, Docket No. 304.) The *Saxon* Order is an order, unrelated to this case, where the Court granted, in

part, a motion for a preliminary injunction in *St. Jude Medical S.C., Inc. v. Saxon*, No. 13-2332, 2013 WL 6481440 (D. Minn. Dec. 10, 2013).

Prior to trial, St. Jude filed a motion in limine to exclude the *Saxon* Order. (Mem. in Supp. of Mot. in Lim. to Exclude Irrelevant Evid. at 4, Oct. 31, 2016, Docket No. 212.) St. Jude argued the *Saxon* Order was irrelevant, prejudicial, and would take "an inordinate amount of trial time" to "explain and contextualize." (*Id.* at 4, 8.) At oral argument, while Sorin did not withdraw its argument that the *Saxon* Order was admissible, Sorin did not focus its oral argument on the *Saxon* Order. (Mots. in Lim. Tr. at 34:7-11, Dec. 14, 2016, Docket No. 287.) The Court granted St. Jude's motion to exclude the *Saxon* Order. (*See* Ct. Mins., Nov. 14, 2016, Docket No. 257.)

Trial began on November 14, 2016. During opening statements, St. Jude first indicated that Sorin's decision not to pursue a preliminary injunction would be an issue in the case. (Trial Tr. at 63:15-25, 73:1-16, 76:15-18, Dec. 14, 2016, Docket Nos. 289-99.) St. Jude also discussed the absence of a preliminary injunction with two witnesses, Homan (*id.* at 361:19-21) and Sorin's expert (*id.* at 1813:12-1814:8). In response to St. Jude's inquiry regarding Sorin's decision not to move for a preliminary injunction, Sorin asked its in-house counsel about Sorin's motives with regard to the preliminary injunction issue. (*Id.* at 1560:10-1561:8.)

On cross-examination of Sorin's in-house counsel, St. Jude addressed Sorin's decision not to seek a preliminary injunction. (*Id.* at 1863:1-1868:4, 1869:13-1870:15.) After this questioning, St. Jude showed the *Saxon* Order to the witness, without prior notice to Sorin, even though the Court had excluded the *Saxon* Order. (*Id.* at 1874:16-

1875:1.)  Sorin objected and, at sidebar, Sorin argued the Court should not permit St. Jude to admit the *Saxon* Order because doing so would violate the Court's order regarding the motion in limine.  (*Id.* at 1875:3-21.)  St. Jude did not admit to the Court that the *Saxon* Order had been excluded and, instead, countered that because it was Sorin's exhibit, St. Jude should be allowed to admit the *Saxon* Order for the purpose of "cross-examin[ing] the witness about his testimony on direct examination about not pursuing an injunction."  (*Id.* at 1875:7-10, 1875:23-25.)  The Court admitted the *Saxon* Order into evidence, but told St. Jude that it could not question Sorin's in-house counsel about the document if he had "never seen it before."  (*Id.* at 1876:5-10.)  When cross-examination resumed, Sorin's in-house counsel testified that he was not familiar with the *Saxon* Order.  (*Id.* at 1876:22-1877:2.)  Yet, St. Jude continued to question Sorin's in-house counsel about the *Saxon* Order.  (*Id.* at 1878:12-1880:25.)

At closing argument, St. Jude discussed Sorin's failure to seek a preliminary injunction at length, explaining the *Saxon* Order gave the jury "an example of an injunction and what an injunction is and what it can do."  (*Id.* at 2422:24-2425:7.) St. Jude also highlighted that the *Saxon* Order was written by the Court and that attorneys from Faegre Baker Daniels were part of the case.  (*Id.* at 2423:10-13, 2424:1-3.)  St. Jude further expressed its opinion about Sorin's motives for filing the lawsuit:  "to punch St. Jude in the face because they [didn't] like the fact that [St. Jude] . . . hired one of [Sorin's] top sales reps."  (*Id.* at 2419:5-7.)  St. Jude also indicated that the reason Sorin did not seek an injunction was "[b]ecause that [didn't] serve [Sorin's] purpose of punching St. Jude in the nose."  (*Id.* at 2424:16-17.)

After the Court charged the jury, the jury deliberated and returned a verdict in favor of St. Jude on all counts. (*See* Jury Verdict, Dec. 1, 2016, Docket No. 280.)

On January 6, 2017, Sorin filed a Motion for a New Trial. Three days later, St. Jude filed its Bill of Costs requesting $49,494.48. Sorin filed objections to the Bill of Costs, asserting St. Jude was not entitled to $16,265.59 of the costs sought. On May 3, 2017, the clerk's office issued a cost judgment in the amount of $47,444.85 – reducing St. Jude's requested costs by $2,049.63. In response, Sorin filed a motion to review the clerk's cost judgment, asking the Court to exclude $7,442.64 of costs.

## ANALYSIS

**I.    MOTION FOR NEW TRIAL**

Sorin moves the Court to grant a new trial under Fed. R. Civ. P. 59 because, in Sorin's view, the Court erred in admitting the *Saxon* Order and St. Jude improperly argued Sorin had a litigious motive in bringing the case. Rule 59(a)(1) provides in relevant part: "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A new trial is appropriate when, because of legal errors, the first trial "resulted in a miscarriage of justice." *Gray v. Bicknell*, 86 F.3d 1472, 1480 (8th Cir. 1996). "The authority to grant a new trial is within the discretion of the district court." *Id.*

### A. Alleged Evidentiary Error

Sorin argues a new trial is appropriate because the Court erred in admitting the *Saxon* Order. For an evidentiary error to amount to a miscarriage of justice, "the error[] must affect a party's substantial rights," meaning the error "substantially influence[d] the jury's verdict." *Williams v. City of Kan. City*, 223 F.3d 749, 755 (8th Cir. 2000); *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."). Said another way, Sorin must show the evidentiary error was "so prejudicial that a new trial would likely produce a different result." *Harrison v. Purdy Bros. Trucking Co.*, 312 F.3d 346, 351 (8th Cir. 2002) (citation omitted); *see also Ryther v. KARE 11*, 864 F. Supp. 1510, 1521 (D. Minn. 1994) (noting the moving party bears the burden of proving harmful error).

Here, even if the Court erred in admitting the *Saxon* Order, the admission of the evidence was not "so prejudicial that a new trial would likely produce a different result." *See Harrison*, 312 F.3d at 351. First, as set forth in the Court's summary judgment order, this case presented numerous factual disputes regarding St. Jude's actions when hiring Homan and Tracy and whether St. Jude's conduct caused Sorin damage. *Sorin*, 176 F. Supp. 3d at 829-34. St. Jude presented evidence on each of these issues and, therefore, "there was ample evidence before the jury to support its" verdict in favor of St. Jude. *See Williams v. Sysco S.F., Inc.*, No. 10-3760, 2013 WL 6623180, at *2 (N.D. Cal. Dec. 16, 2013); *see also Gyamtso v. New Metro Trucking Corp.*, No. 11-3457, 2014 WL 3012907,

at *3 (D. Minn. July 3, 2014) (noting a new trial is not required when a jury's verdict has "an evidentiary basis").

Second, the Court permitted both Sorin and St. Jude, without objection from either, to question witnesses about Sorin's motives for not moving for a preliminary injunction. (Trial Tr. at 361:19-21, 1560:10-1562:11, 1813:12-1814:8, 1862:23-1868:4, 1869:13-1870:15.) Generally, an evidentiary error is not prejudicial when the information in question is "presented . . . through multiple avenues," not all of which are improper. *Gyamtso*, 2014 WL 3012907, at *4. Here, testimony regarding preliminary injunctions would have been admitted even without the *Saxon* Order.

Finally, the *Saxon* Order was one out of almost two hundred exhibits admitted during trial. (Pl.'s Ex. List, Dec. 8, 2016, Docket No. 282; Def.'s Am. Trial Ex. List, Dec. 8, 2016, Docket No. 283.) And nothing in the verdict form indicates the jury was prejudicially influenced by the *Saxon* Order. *Coterel v. Dorel Juvenile Grp., Inc.*, 827 F.3d 804, 808 (8th Cir. 2016) (noting the Court must "look to the jury's verdict" to determine if evidentiary errors "prejudicially influenced the outcome of the case" (quoting *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123, 1131 (8th Cir. 2000))). Under these circumstances, the Court "cannot 'know' the jury used the challenged evidence for an improper purpose." *Id.*; *see also Lovett ex rel. Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1080 (8th Cir. 2000) ("[T]he case was submitted on a general verdict form, so we can only speculate whether [the plaintiff] was prejudiced. Speculation, however, is not a sufficient basis for finding a plaintiff's substantial rights were affected, and we will not set aside the jury's verdict in this case.")

For these reasons, the Court finds that even if it was an error to admit the *Saxon* Order, the error was not so prejudicial that a new trial would likely produce a different result. The Court will deny Sorin's motion for a new trial on that ground.

B.    **Alleged Litigiousness**

Sorin also argues the Court should grant a new trial because St. Jude made improper arguments that violated Sorin's First Amendment rights.[1] Specifically, Sorin asserts St. Jude improperly "argued that Sorin's lawsuit was subjectively motivated to 'hit St. Jude in the face with this lawsuit' for anticompetitive advantage." (Mem. in Supp. of Pl.'s Mot. for New Trial at 35, Jan. 6, 2017, Docket No. 302.)

"[W]hen a new trial motion is based on improper closing arguments, a new trial should be granted only if the statements are 'plainly unwarranted and clearly injurious' and 'cause [] prejudice to the opposing party and unfairly influence[] a jury's verdict.'" *Harrison*, 312 F.3d at 351 (alterations in original) (quoting *Alholm v. Am. Steamship Co.*, 144 F.3d 1172, 1181 (8th Cir. 1998)). But "[a] failure to object to statements made during

---

[1] Sorin attempts to tie its First Amendment arguments to the Court's admission of the *Saxon* Order. (*See* Mem. in Supp. of Pl.'s Mot. for New Trial at 36, Jan. 6, 2017, Docket No. 302 ("[T]he fact that the evidentiary error violated Sorin's First Amendment rights leaves no real question that the error is reversible . . . .").) But Sorin's own briefing acknowledges that any alleged claims St. Jude made regarding "litigiousness" were asserted during closing argument and not directly connected to the **admission** of the *Saxon* Order. (*Id.* at 17-21, 29-30, 35.) In fact, the only testimony Sorin relies on to support the contention that litigiousness was an issue during the admission of the *Saxon* Order is from a side-bar related to a different exhibit – an exhibit the Court prohibited because St. Jude had "gone far enough on" the preliminary injunction topic. (*Id.* at 17 (quoting Trial Tr. 1885:23-1886:2); *id.* at 28 (quoting Trial Tr. 1886:19-20).) Further, even though Sorin attempts to connect St. Jude's statements at side-bar to the *Saxon* Order, Sorin does not point to a single question during cross-examination on the *Saxon* Order related to litigiousness; as opposed to Sorin's decision not to seek a preliminary injunction. Therefore, the Court will analyze Sorin's litigiousness argument separately.

- 8 -

closing argument waives such an objection." *Billingsley v. City of Omaha*, 277 F.3d 990, 997 (8th Cir. 2002). And "[o]nly in extraordinary situations, in order to prevent a 'plain miscarriage of justice,' will a reviewing court reverse a judgment based upon errors not objected to at trial." *Lange v. Schultz*, 627 F.2d 122, 127 (8th Cir. 1980) (quoting *Wichmann v. United Disposal, Inc.*, 553 F.2d 1104, 1106 (8th Cir. 1977)).

Not once during trial did Sorin object to St. Jude's alleged arguments regarding litigiousness and, therefore, Sorin's arguments are waived. *See Billingsley*, 277 F.3d at 997. Further, even if Sorin had objected at trial, the comments underlying St. Jude's alleged litigiousness argument were not "clearly injurious" such that they "cause[d] prejudice to [Sorin] and unfairly influence[d the] jury's verdict." *Harrison*, 312 F.3d at 351 (quoting *Alholm*, 144 F.3d at 1181). On two occasions, the Court admonished the jury that statements made by attorneys are not evidence. (Trial Tr. 8:23-9:7; Ct.'s Jury Instrs. at 6, Dec. 1, 2016, Docket No. 277; *see also id.* at 2485:15-22 (Sorin admonishing the jury that arguments are not evidence).) This kind of instruction generally cures any prejudice to a party caused by statements made during closing argument. *Billingsley*, 277 F.3d at 997. Therefore, while a charge of litigiousness can in some instances result in a new trial, *see, e.g.*, *Batiste-Davis v. Lincare, Inc.*, 526 F.3d 377, 380-81 (8th Cir. 2008), Sorin failed to show a miscarriage of justice will occur in the absence of a new trial.

For these reasons, the Court will deny Sorin's motion for a new trial on the basis of improper litigiousness arguments.

## II. COST JUDGMENT

Sorin also moves for the Court to review the clerk's cost judgment, asking the Court to exclude $7,442.64 in costs. Rule 54(d) of the Federal Rules of Civil Procedure provides that the Court should tax costs in favor of a prevailing party. The expenses that may be taxed as costs pursuant to Rule 54 are listed in 28 U.S.C. § 1920. *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 601 (8th Cir. 2009).

> Under [section] 1920, a judge or court clerk "may tax as costs" fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for copies of necessary papers, docket fees, and compensation of court appointed experts and interpreters.

*Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015) (citing 28 U.S.C. § 1920).

The Court has substantial discretion in awarding costs to a prevailing party under Rule 54(d) and section 1920. *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 363 (8th Cir. 1997). "As the losing party, [Sorin] bears the burden of overcoming the presumption that [St. Jude] is entitled to recover all costs allowed by [section] 1920." *Stanley*, 784 F.3d at 464. In so doing, Sorin must show the cost judgment "is inequitable under the circumstances." *Concord Boat Corp. v. Brunswick Corp.*, 309 F.3d 494, 498 (8th Cir. 2002) (quoting *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462-63 (3d Cir. 2000)).

Sorin asserts St. Jude cannot recover $7,442.64 in deposition transcript costs. Sorin divides its objections into two types: (1) $4,141.40 for deposition transcripts that were not necessarily obtained for use in the case; and (2) $3,301.24 in allegedly nontaxable incidental deposition expenses.

### A. $4,141.40 in Deposition Transcript Costs

Sorin argues the deposition transcripts of four former Sorin employees – Brett Butcher, Patty Carr, Scott McCormick, and Spencer Seibert (collectively, "former Sorin employees") – were not necessarily obtained for use in the case. St. Jude responds that it used the former Sorin employees' deposition transcripts during its briefing on summary judgment and they were necessary to support St. Jude's defenses in the action.

Section 1920(2) allows taxation of fees for transcripts "necessarily obtained for use in the case." The most direct evidence of "necessity" is if the transcript was actually used in a court proceeding. *Ryther v. Kare 11*, 864 F. Supp. 1525, 1534 (D. Minn. 1994). However, even if a transcript was not used in a court proceeding, "[t]he costs of such a transcript may still be taxable when the deposition appeared reasonably necessary to the parties at the time it was taken." *Id.* But "[d]epositions that merely assist discovery or are investigatory in nature . . . generally are not taxable." *Id.*

The Court finds the contested deposition transcripts were reasonably necessary to the parties at the time the depositions were taken. St. Jude submitted and cited to the former Sorin employees' deposition transcripts in its memorandum in support of its motion for summary judgment, (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Summ. J. Mem.") at 5-6, Oct. 19, 2015, Docket No. 127), and the Court relied upon the depositions in making its summary judgment decision, *Sorin*, 176 F. Supp. 3d at 820 & n.3. The Court, therefore, concludes that the costs related to the former Sorin employees' deposition transcripts were properly included in the cost judgment. *See Streed v. Neuharth*, No. 12-1340, 2014 WL 2195081, at *2 (D. Minn. May 27, 2014).

### B. $3,301.24 in Allegedly Nontaxable Incidental Expenses

Sorin also contests $3,301.24 in the cost judgment as "nontaxable incidental expenses" related to the deposition transcripts of expert witnesses Maria Shepherd and Timothy Nantell (collectively, "St. Jude's experts").

First, Sorin asserts St. Jude failed to explain why both a printed transcript and an electronic recording of the St. Jude experts' depositions were necessary. *See* D. Minn. Bill of Costs Guide at 5 (2015). St. Jude responds that that Eighth Circuit has held a party can recover costs for both a printed copy and an electronic recording of the same deposition and, therefore, St. Jude is entitled to costs for both. *See Stanley*, 784 F.3d at 466-67. But both the district court and the Eighth Circuit have informed parties that to recover costs for both a printed copy and an electronic recording of a transcript, the party must "explain why both types of transcripts were necessarily obtained for use in the case." D. Minn. Bill of Costs Guide at 5; *see also Stanley*, 784 F.3d 466-67 (explaining both the printed transcript and electronic recordings must be "necessarily obtained for use in the case," as section 1920 requires). Here, St. Jude did not provide any explanation for why both recordings and printed copies of the St. Jude experts' depositions were necessary, (*See* Aff. of JoLynn Markison in Supp. of Def.'s Bill of Costs ("Markison Aff.") ¶¶ 14, 20, Jan. 9, 2017, Docket No. 307; Decl. of JoLynn M. Markison in Opp. to Pl.'s Mot. to Review Clerk's Cost J. ¶ 2, May 24, 2017, Docket No. 327), and therefore the Court finds $697.50 was improperly included in the cost judgment.

Next, Sorin argues St. Jude improperly included the cost of expedited processing in connection with the St. Jude experts' deposition transcripts. St. Jude replies that

expedited processing was necessary because of the close proximity between the St. Jude experts' depositions and briefing deadlines for St. Jude's summary judgment motion. (*See* Def.'s Summ. J. Mem. at 38 (filed October 19, 2015); Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J., Nov. 9, 2015, Docket No. 149 (filed November 9, 2015); Def.'s Reply in Supp. of Mot. for Summ. J., Nov. 23, 2015, Docket No. 158 (filed November 23, 2015); Decl. of Scott A. Selix in Supp. of Def.'s Bill of Costs ("Selix Decl."), Ex. B, Jan. 30, 2017, Docket No. 316 (noticing depositions on October 14, 2015, and November 2, 2015).)

"The costs of expedited transcripts obtained solely for the convenience of counsel are not taxable." *Damgaard ex rel. I.L.D. v. McKennan*, No. 13-2192, 2016 WL 1718370, at *2 n.2 (D. Minn. Apr. 29, 2016) (citing D. Minn. Bill of Costs Guide at 6). And "[t]o be entitled to the costs of expedited transcripts, the requesting party must provide an explanation as to why it was necessary to produce the transcript in an expedited manner." *Id.* One circumstance where a party can recover expedited transcripts as part of the cost judgment is "where depositions occurred within close proximity to a dispositive motion deadline." *Delapp v. Shearer's Foods, Inc.*, No. 15-20, 2016 WL 1718395, at *2 (W.D. Va. Apr. 29, 2016). Here, St. Jude provided an explanation for why it was necessary to produce the transcripts of the St. Jude experts' depositions in an expedited fashion and, therefore, $2,223.84 in expedited processing costs was properly included in the cost judgment.

Finally, Sorin asserts St. Jude improperly included other incidental costs including ASCII fees, exhibit scanning, handling fees, a condensed transcript, and a digital transcript totaling $379.90. Each line item is discussed in turn below.

With regard to ASCII fees associated with the quick delivery of a rough transcript for the Nantell deposition, such costs are generally "incurred only for the convenience of counsel and thus are not properly awarded." *Ventura v. Kyle*, No. 12-472, 2015 WL 12826467, at *2 (D. Minn. Jan. 13, 2015). But ASCII fees can be collected when incurred out of necessity. *168th & Dodge, LP v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 957-58 (8th Cir. 2007). For the same reason St. Jude is entitled to recover its costs for expedited transcripts, St. Jude is also entitled to recover costs for the rough ASCII transcript. St. Jude set forth a specific reason the rough ASCII transcript was necessary – the proximity to summary judgment briefing deadlines – and appropriately should recover the $217.50 in ASCII fees.

As to exhibit scanning, the Court has held this kind of cost is "allowable because the exhibits themselves are part of the record of the depositions." *Shukh v. Seagate Tech., LLC*, No. 10-404, 2014 WL 4348199, at *3 (D. Minn. Sept. 2, 2014), *vacated on other grounds*, 618 F. App'x 678 (Fed. Cir. 2015). The Court will permit St. Jude to recover the cost of exhibit scanning in the amount of $72.40.

Handling fees, on the other hand, are generally not recoverable. *See Cattanach v. BNSF Ry. Co.*, No. 13-1664, 2016 WL 6915507, at *5 (D. Minn. Oct. 31, 2016), *R&R adopted*, 2016 WL 6916803 (D. Minn. Nov. 21, 2016). Such costs are viewed as "administrative fees," which are "considered ordinary business expenses that cannot be

recovered as costs." *Johnson v. Holway*, 522 F. Supp. 2d 12, 19 (D.D.C. 2007); *see also Craig v. District of Columbia*, 197 F. Supp. 3d 268, 288 (D.D.C. 2016) (removing handling fees from the bill of costs). No argument has been made to distinguish this general rule, so the Court will reduce the cost judgment in the amount of $20.00 for the handling fee associated with the Shepherd deposition.

Lastly, while condensed and digital transcripts can "provide an easier, faster, and more convenient way to reference the deposition transcript," *B&B Hardware, Inc. v. Hargis Indus., Inc.*, No. 06-1654, 2010 WL 3655737, at *2 (E.D. Ark. Sept. 9, 2010), "courts have generally disallowed [this kind of cost] on the basis that such copies are obtained primarily for counsel's convenience." *Shukh*, 2014 WL 4348199, at *3 n.4. And when such cost is permitted, the party generally presents "a showing of some necessity." *Chism v. New Holland N. Am., Inc.*, No. 07-150, 2010 WL 1961179, at *4 (E.D. Ark. May 13, 2010). Here, while St. Jude contends it ordered condensed and digital transcripts because of the short time period between the deposition and the summary judgment briefing schedule, St. Jude also admits that it wanted condensed and digital copies for its own convenience. Because St. Jude's purpose was to have a "more convenient way to reference the deposition transcript[s]," (*see* Def.'s Opp. to Pl.'s Mot. to Review the Clerk's Cost J. at 23, May 24, 2017, Docket No. 326), St. Jude failed to explain the need for alternate formats. The Court will, therefore, reduce the cost judgment in the amount of $70.00 for the condensed and digital transcripts associated with the Shepherd deposition.

For these reasons, the Court will grant in part and deny in part Sorin's motion to review the clerk's cost judgment, reducing the cost judgment by $787.50 for a total cost judgment of $46,657.35.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Sorin Group USA's Motion for a New Trial [Docket No. 300] is **DENIED**.

2. Plaintiff Sorin Group USA's Motion to Review the Clerk's Cost Judgment [Docket No. 321] is **GRANTED in part** and **DENIED in part**. The Cost Judgment [Docket No. 320] is hereby reduced by $787.50, resulting in a total cost judgment of $46,657.35. The Court, therefore, taxes costs against Plaintiff Sorin Group USA in the amount of $46,657.35 and directs the Clerk's Office to enter **JUDGMENT** accordingly.

DATED: August 15, 2017 _____s/John R. Tunheim_____
at Minneapolis, Minnesota.  JOHN R. TUNHEIM
Chief Judge
United States District Court